WILLIAM M. BRUCE, APPELLANT, V. ALVIN O. CADMAN ET AL., APPELLEES.

FILED JUNE 27, 1923. No. 22395.

1. **Trusts**: CONSTRUCTIVE TRUST: BURDEN OF PROOF. The burden of proof is upon one claiming the title to real estate by virtue of a constructive trust, to establish the trust by clear and satisfactory evidence.

2. ———: ———: SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* not sufficient to establish a constructive trust.

APPEAL from the district court for Phelps county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*Frank A. Anderson,* for appellant.

*Davis & Ellis* and *George W. Prather, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

DAY, J.

This action was brought by William M. Bruce against Alvin O. Cadman, and his wife, Mrs. Alvin O. Cadman, praying for a decree quieting the title in plaintiff to certain real estate in the city of Holdrege, Nebraska, and also for an injunction restraining the defendants from disposing of said real estate. Upon the filing of the petition a restraining order was granted which, by stipulation of the parties, was continued in force until the trial of the case on its merits. Upon the trial the restraining order was dissolved and the plaintiff's action dismissed. Plaintiff appeals.

The plaintiff's action is founded upon the theory of a constructive trust. It is his claim that the real estate in question was purchased with his money, and the title thereto was taken in the name of Alvin O. Cadman.

The record shows that the plaintiff, for some time prior to the transaction which forms the basis of this action, had been engaged in the business of buying and selling grain. In his business he operated nine elevators. Defendant Alvin O. Cadman was employed by the plaintiff as bookkeeper, but he performed the duties of office clerk and general utility man. As a part of his duties he drew checks on the plaintiff's banking account by signing the same, "W. M. Bruce, A. O. C." During his term of employment, which extended from the latter part of 1917 to the spring of 1920, he drew hundreds of checks in this manner. Defendant testified that he had authority to draw checks for his personal affairs on the plaintiff's banking account without limitation. Plaintiff denies that defendant's authority was as broad as the defendant claims.

Be that as it may, the fact is that defendant did draw checks in payment of his personal affairs on the plaintiff's banking account. Such checks bore the notation,

"Chg. A. O. C.," which meant that the same should be charged against the defendant's account on the books. The defendant kept no bank account, but transacted all his business by checks drawn on plaintiff's banking account. He would credit himself on the plaintiff's books with his salary. Other moneys received by him were deposited in plaintiff's name in the bank, and in turn credited to defendant on the plaintiff's books. In other words, the defendant treated the plaintiff as his banker, the status of his account with the plaintiff being disclosed by the plaintiff's books.

The record shows that during the period of his employment defendant drew 674 checks for his personal affairs, ranging in amounts from 43 cents to $1,500. That the plaintiff knew that defendant was using the bank account in this manner, there seems to be no doubt. He had access to the books, frequently examined them, and posted some of these very checks.

It appears that defendant drew 434 of these checks prior to August 7, 1919, at which time he drew a check for $1,500 in payment for the residence property which is the subject of dispute. This check bore the notation, "Chg. A. O. C.," and was charged against defendant's account on plaintiff's books. Some 15 months later, and when defendant had entered into a contract to sell the real estate, the plaintiff brought the present suit.

The evidence on behalf of the defendant tends to show that at the time he drew the $1,500 check in payment of the real estate he had a credit on the plaintiff's books for a much larger sum than $1,500. Defendant insists that in paying for the property he simply used his own money. The record shows that both the plaintiff and defendant at divers times speculated on the board of trade in grain transactions, and each had a separate account disclosing the status of these transactions. It appears that the plaintiff had a large credit with one of the large grain dealers. When plaintiff gave an order for the purchase or sale of grain in his own behalf, his

Bruce v. Cadman.

trade would be designated by the initial letter "A."
When defendant made such a trade, his would be designat-
ed by the letter "C;" but in either instance the trading
would be done in the name of the plaintiff. The credits
and debits, as the case might be, were properly entered
on the plaintiff's books. On August 9, 1919, when de-
fendant drew the $1,500 check, his personal account on
the books showed a debit of $2,616.28, and his option
account a credit of $5,021.69, showing a grand balance
to the defendant's favor and credit of $2,405.41. Later
this balance was wiped out by losses, and at the time of
the trial the books indicated that the defendant was
owing plaintiff $6,623.38.

It is the contention of the plaintiff that if several
grain deals, which were still open on August 7, 1919,
had been closed, the credit in defendant's favor would
have been very small, and not sufficient to pay the $1,500
check. He was unable to testify, however, what the out-
standing trades were as his records had become mis-
placed. On this point the defendant testified that the
trades were all closed at that time; that there was no way
of determining from the books when the trades were
made; that some of them were "open" and "shut" the
same day; and that the only method of determining
when the trades were made would be an examination of
the confirmations.

The burden of proof was on the plaintiff to show the
existence of the trust by clear and satisfactory evidence.
This we think he did not do. The evidence shows that
the plaintiff saw this $1,500 check when it came in. He
had previously gone with the defendant to examine the
property purchased, and advised with him concerning
it. That he knew that the plaintiff purchased the prop-
erty, and that the check was given in payment therefor,
seems to be clearly established. This suit, which in fact
was to declare a trust, was not commenced for 15 months
after the defendant purchased the property, and not
until the defendant's credit on the books had been wiped

out and he had become a debtor of the plaintiff in a large sum.

Considering the entire record, we are satisfied that the plaintiff has failed to show by clear and satisfactory evidence the existence of a trust.

The judgment of the trial court was right, and it is, therefore,

AFFIRMED.